UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| THOMAS MOORE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:03-CV-429 PS |
| | ) | |
| STANLEY KNIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

*Pro se* petitioner, Thomas Moore, an inmate at the Miami Correctional Facility ("MCF") in Michigan City, Indiana, was docked 90 days good time credit after he refused to submit a urine sample pursuant to a random drug test. After exhausting his administrative remedies, Moore filed a petition seeking relief under 28 U.S.C. §2254. The Response filed on behalf of the Respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the administrative record including documents designated A through M, which set out the underlying procedures in this conduct adjustment board ("CAB") proceeding. The Petitioner timely filed a traverse.

The Petitioner claims that the State violated his constitutional rights in a number of ways: 1) that the manner in which the urinalysis was conducted violated Moore's Fourth and Fourteenth Amendment rights; 2) that he was denied the right to present witnesses and evidence; and 3) that he was not given an opportunity to confront the evidence against him.

## I. RELEVANT FACTS

On June 27, 2003, Sgt. Truax gave Moore an 8 oz. cup of water and explained that Moore had two hours to submit a urine sample, and that if he didn't produce a sample a conduct report would be issued. Moore admits that he drank the glass of water. (*See* Petitioner Ex. A.) Sgt. Buckley also observed this. (Resp. Ex. C.) In conducting urinalysis, the State has issued guidelines which call for the person taking the test to drink eight ounces of water and gives two hours for the specimen to be produced. (*Id.*) The same standards apply to testing in federal institutions. *See* 28 C.F.R. § 550.31(a).

In this case, two hours after drinking the water, Moore had not submitted the urine sample. (Resp. Ex. A.) Sgt. Truax wrote the conduct report on June 30, 2003, charging Moore with refusal to submit. Moore claims that he was dehydrated at the time and he was merely unable, not unwilling, to provide the requested sample. Moore claims that he told Truax that he was willing to submit to, and to pay for, a blood test in lieu of the urinalysis, but Truax had no recollection of this. (Resp. Ex. E.)

Moore was notified of the disciplinary hearing on July 2, 2003. Moore requested a statement from three witnesses and a medical request slip. The CAB hearing was held on July 7, 2003. The CAB found Moore guilty. Moore's finding of guilt was based on the conduct report, witness statements, the medical request slip, and Moore's own statement. (Resp. Ex. H.) The CAB found that "[b]y definition, ofd (offender) failed to provide a urine sample. No medical documentation excusing ofd exists." (*Id.*) The CAB then imposed a loss of 90 days earned credit time. Moore appealed to the Facility Head and Final Reviewing Authority without success.

## II.  STANDARD OF REVIEW

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision.  Due process requires that Moore be given: (1) advance written notice of the charges against him at least 24 hours before the hearing;  (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073 (7th Cir. 1994) (citing *Wolff*, 418 U.S. at 563-67)).  For the hearing to be meaningful, the prisoner should also be afforded an opportunity to be heard before an impartial decision maker.  *Id.*

## II.  DISCUSSION

Moore raises four constitutional challenges to his CAB proceedings and sanctions.  He claims: 1)  that the manner in which the urinalysis testing is conducted violated his rights; 2) that he was denied witnesses;  3) that he was denied evidence; and 4) that he was denied the opportunity to confront the evidence against him.  The Court will address each of these concerns in the order that Moore raised them.

### A. Urinalysis Testing

Moore principally challenges the manner in which the urinalysis testing was conducted.  In particular, he claims the following: "Moore's contention is simple: it is <u>not</u> reasonable to expect a person who has been sick for two days, and become dehydrated, to urinate upon command under the restrictions as dictated by Sgt. Truax."  (*See* Moore's traverse at 4.) (emphasis in original).

3

Moore relies on *Turner v. Safley*, 482 U.S. 78 (1987), for his claim that the testing procedures in his case were unreasonable. There is nothing unreasonable about the testing procedures at all. The procedures utilized by the State of Indiana allow a person being tested to have an eight ounce glass of water and be given two hours to produce a sample. This is completely reasonable. Indeed, as mentioned, it is consistent with the practices at federal institutions. *See* 28 C.F.R. 550.31(a).

The testing procedures employed by the State also contain exceptions that contemplate a variety of situations that may arise during testing. For example, if the offender has "shy bladder syndrome" he can be placed in a "dry cell" at the discretion of the shift supervisor and reasonable precautions may be taken to ensure that the offender is not able to dilute or adulterate the sample. (*See* Petitioner's Ex. N.) But there was no indication that Moore suffered from this condition. In addition, the State's policy also states that:

> [t]he Shift Supervisor, Physician or medical staff, at their discretion, may increase the amount of water consumed, particularly in hot weather, and/or extend this two (2) hour period an additional hour where warranted by the specific situation. (e.g., where the offender has a <u>documented</u> medical or psychological problem, or where the offender my be dehydrated.).

(Petitioner Ex. N at 30.) (emphasis in original).

Moore alleges that the urinalysis was conducted in an unreasonable manner because these alternatives that were available to Sgt. Truax were not utilized. Specifically, the Truax didn't allow Moore an additional eight ounces of water, nor did he allow Moore additional time in which to produce the sample as allowed for in the directive. (Petitioner's Mem. of Law in Support of Petition; Ex. N at 30.) The problem with this argument is that it was simply rejected by the CAB. The State's policy allows for these additional procedural steps only if, in the exercise of his discretion, the testing officer deems them appropriate. Here, Moore was given the opportunity to

4

present these points to the CAB and they simply rejected it.  Moore did not have a *documented* medical problem before the test was administered (*see* Resp. Ex. H), and Sgt. Truax did not recall if Moore had told him he was sick.  (Resp. Ex. E.)  The CAB was free to accept Sgt. Truax's affidavit and reject the affidavits of the offenders who testified to the contrary.

When a prisoner is subjected to the loss of good time credit, due process requires: (1) advance written notice of the charges against him at least 24 hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  *Wolff*, 418 U.S. at 563-67; *Henderson*, 13 F.3d at 1077.  In this case, Moore was afforded all of these protections.  The simple fact that the CAB did not believe his claim that we was sick and unable to produce the sample, does not mean that his constitutional rights were violated.

Moore also argues that he was read the wrong rules for urinalysis testing because directive #99-09 had been superseded by directive #99-21. (Mem. in Support of Petition at 6.)  Thus, he argues that he was not given "fair notice" of the urinalysis procedures.  He is wrong.  After reviewing Moore's affidavit, it is clear that the notice given to Moore about the testing procedures, and the implementation of those procedures for Moore, are consistent with the procedures as described in directive #99-21.  The changes that were made in the policy did not effect how a urinalysis is conducted.  The changes made from the earlier policy to the superseded policy are summarized in a letter dated December 8, 1999.  (*See* Petitioner's Ex. N.)  A review of that letter shows that the changes in the policy were minor and none had to do with the process of taking the sample.  Thus, Moore's argument that he was not given "fair notice" of the urinalysis procedures

5

is without merit.

At bottom, although it appears that Moore is challenging the urinalysis test, he is actually challenging the way in which one of the exceptions of that test was applied to him. He alleges that he was unreasonably tested even though he met the exception for a dehydrated offender, and that exception was not followed. (*See* Petition at 4.) As mentioned above, whether or not Moore fit the exception was a factual determination for the CAB to make, not a constitutional challenge to the test itself. Absent a denial of due process rights, an allegation that a prison disciplinary committee's findings are not supported by the evidence does not require de novo review of those proceedings. Instead, there only needs to be "some evidence" in the record supporting the decision, *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000), which means no more than "a modicum of evidence." *Id.* at 652. In this case, the CAB found that Moore did not meet any exception from testing because he did not have a documented medical condition that would excuse him from the test. (Resp. Ex. H.) On appeal, the superintendent also found that Moore's medical file did not support his defense that he had been dehydrated. In fact, the medical slip submitted by Moore was signed on June 28, 2003, the day *after* he was ordered to give the sample. Because there is some evidence to support the CAB's findings, Moore's rights were not violated.[1]

In sum, the prison has a significant and legitimate interest in ensuring that inmates produce a urine sample. If there were no adverse consequence for not producing one, there would be no

---

[1] Moore points to the fact that he offered to give and pay for a blood sample in lieu of the urine sample as proof that he was merely unable and not unwilling to be tested. But the State is not required to run parallel drug testing systems especially when urine samples are preferred over blood samples "because drug traces remain in the urine longer than in blood" and because blood samples can only be taken at medical facilities. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 610 (1989). *See also Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672, n.2 (1989) (urinalysis can be "highly accurate assuming proper storage, handling, and measurement techniques").

incentive for inmates to comply with the drug testing program. Moore's Fourth Amendment claim is without merit.

### B. Witness Testimony

Prisoner's have the right to call witnesses to testify on their behalf at CAB hearings when consistent with institutional safety and correctional goals. *Henderson*, 13 F.3d at 1077. However, that right is not an unlimited one. *Sweeney v. Parke,* 113 F.3d 716, 719 (7th Cir. 1997), *overruled on other grounds by White v. Indiana Parole Bd.*, 266 F.3d 759 (7th Cir. 2001). Prison officials have discretion to determine whether to have the witnesses present or to allow them to submit a written statement, and there is no right to confront witnesses at a CAB hearing. *Wolff*, 418 U.S. at 567-8. In addition, the right to call witnesses can be waived in disciplinary proceedings, just as in any other proceeding. *Sweeney,* 113 F.3d at 720 (right to witness waived by not requesting it); *Miller v. Duckworth*, 963 F.2d 1002, 1004, n. 2 (7th Cir. 1992) (prisoner waives right to call witness by waiting until day of the hearing to make request).

In this case, Moore requested librarian Robert Moore and the prison doctor as witnesses to state that he had been sick and unable to urinate. However, he didn't request these witnesses until he was at the CAB hearing. (Petition at 4.) Moore requested a continuance of the hearing so that he could get the two witness statements. (*Id*.) But that request came too late and the request for a continuance was therefore denied. Under *Sweeney* and *Miller*, that denial was permissible.

In its reason for decision, the CAB stated that Moore's statements were repetitive in any event, and thus denied a continuance on this basis as well. (*See* Resp. Ex. H.) The CAB had the statements of the witnesses that Moore requested on his screening report. Additionally, the record demonstrates that the CAB had a copy of the medical request slip that Moore requested.

In sum, Moore's due process rights were not violated by the CAB's denial of a continuance so that he could obtain the two witness statements. That request, coming at the hearing itself, came too late.

**C. Denial of Evidence**

Moore alleges that his lay advocate presented as evidence four exculpatory affidavits, but the CAB chairman "tossed said affidavits to the side as if they were worthless." (Mem. in Support of Petition at 9.) However, there is nothing on the Report of Disciplinary Hearing which indicates that the affidavits were not considered. As a matter of fact, they are part of the official record in this case. In *Piggie v. Cotton*, 344 F.3d 674, 677-78 (7th Cir. 2003) the court stated, "...the rule of *Brady v. Maryland*, 373 U.S. 83 (1963), requiring the disclosure of material, exculpatory evidence, applies to prison disciplinary proceedings." *See also Chavis v. Rowe*, 643 F.2d 1281, 1285-86 (7th Cir. 1981). The function of *Brady* in the prison disciplinary context is two-fold: first, to ensure that the disciplinary board considers all relevant evidence and, second, to enable the prisoner to present his best defense. *Piggie,* 344 F.3d at 678.

In this case, Moore presented the affidavits but they were simply not credited by the CAB. Indeed, in his Petition, Moore admits that the Chairman of the CAB "discounted" the affidavits. (Petition at 4.) Thus, Moore was not denied the right to present evidence. Instead, it's more accurate to state that he was allowed to present the evidence but the evidence was simply rejected by the CAB.

**D. Confrontation of Evidence**

Moore says that the CAB relied upon information from the American Medical Association ("AMA") which he was unable to review in violation of his due process rights. The information

used by the CAB from the AMA was not exculpatory evidence, and the CAB had no obligation to provide it to Moore. The CAB had the evidence Moore presented, including the medical request slip and found that Moore was guilty. The AMA information would not have helped Moore. Accordingly, the CAB didn't violate Moore's due process rights by failing to provide the AMA information to him.

## CONCLUSION

For all the reasons stated, and because it is clear that none of Moore's constitutional rights have been violated, this petition for relief under 28 U.S.C. §2254 is **DENIED.**

**SO ORDERED.**

ENTERED: May 19, 2005

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT